Filed 9/29/20  In re I.A. CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re I.A., a Person Coming Under the Juvenile Court Law. | |
| FRESNO COUNTY DEPARTMENT OF SOCIAL SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>DAWN W.,<br><br>Appellant. | F080836<br><br>(Super. Ct. No. 12CEJ300255-4)<br><br>**OPINION** |

### THE COURT[*]

APPEAL from an order of the Superior Court of Fresno County.  Jane Cardoza, Judge.

Dawn W., in pro. per., for Appellant.

Daniel C. Cederborg, County Counsel, and Lisa R. Flores, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Franson, Acting P.J., Snauffer, J. and De Santos, J.

In this dependency action, appellant Dawn W. appeals the juvenile court's order denying her Welfare and Institutions Code section 388[1] petition to have her adoptive daughter's minor half sister, I.A., placed with her. Finding no error, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On November 15, 2019, appellant filed a section 388 petition in the juvenile dependency matter regarding I.A. Appellant is the adoptive mother of I.A.'s half sibling, V.W. V.W. was born in November 2013. Appellant was a non-relative extended family member placement for V.W., and the adoption became final in March 2015. In March 2019, appellant learned that V.W.'s biological mother had given birth to I.A. in February 2019.

In appellant's section 388 petition, she requested the juvenile court to change its order placing I.A. with her current care provider and place I.A. in her home instead. Under the section in the petition for new information, appellant alleged she had requested placement of I.A. since she found about I.A.'s birth in March 2019 but was informed by the Fresno County Department of Social Services (department) that the current care provider was a blood relative. Appellant alleged the care provider was not related. Appellant alleged she and her husband had been licensed resource parents since December 2018. Appellant alleged the requested change of placement was in I.A.'s best interest because:

> "It would be better for [I.A.] to have an opportunity for life-long support from her sisters and our family. The current caregiver is elderly and is likely to become unable to care for [I.A.] at some point during her childhood. We would be happy to remain in contact with her if the court wishes. We fear that [I.A.] will not have visits with [V.W.] once an adoption has been finalized due to caregivers past behavior. We can keep [I.A.] in contact with [I.A.'s older half siblings.]"

---

[1] All further undesignated statutory references are to the Welfare and Institutions Code.

2.

The court ordered a hearing on appellant's petition.

Appellant subsequently filed a declaration accompanied by approximately 65 pages of attachments. Among the attachments was a letter written by appellant in March 2019 to the juvenile court outlining her attempts to establish a relationship between V.W. and I.A. In the letter, appellant explained she had reached out to the department in order to establish visitation between V.W. and V.W.'s older half siblings and I.A. Apparently, visitation was established by April 2019, with I.A.'s care provider agreeing to visits one to two times per month.

Also attached to appellant's declaration was several emails addressed by her to various social workers attempting to get information about the case. Of particular note is one of the emails addressed to appellant from a Fresno County employee, "Program Manager" Dalvin Baker, who provided the following timeline of appellant's involvement with the case:

> "It appears that during the early stages of this case (March 2019 - April 2019), you [appellant] had been requesting visitation between [I.A., V.W., and appellant]. [The family reunification social worker] first received this request on March 21, 2019 (although I am aware that you attempted to reach [the emergency response social worker] prior to that, with March 5, 2019 being your first attempt).

> "On April 2, 2019, you indicated to [the family reunification social worker] that if placement was ever at risk, you would be willing to provide placement/a permanent plan for [I.A.]

> "In my review of this case, it does not appear that placement was ever at risk. Additionally, it appears that your primary request was only for visitations to occur."

Baker went on to say that appellant's first apparent request for placement was to the adoption social worker on November 8, 2019. Baker noted that according to his records, the last sibling visitation occurred in April/May and asked appellant why visitation

3.

stopped. Baker also asked what initiated appellant's shift from requesting visitation to placement/adoption of I.A.

Appellant responded to Baker by stating it was her position she always wanted placement of I.A. but did not want to seem overly aggressive and felt that the "law was on [her] side for siblings to be placed together" and that I.A. would be placed with her eventually. She stated she had last reached out to the care provider in May 2019, but the care provider never responded. There appears to have been another visit between I.A. and appellant and V.W. in November 2019.

At some point before the hearing on the petition, it appears I.A.'s parents' parental rights were terminated.

At the hearing on appellant's section 388 petition, counsel for the department requested that I.A. remain where she was currently placed and had been placed since she was three days old. Counsel argued a placement change was not in the best interests of I.A., who was at that time almost one year old. Counsel also argued there had not been a change in circumstances to justify granting appellant's petition.

Counsel for I.A. submitted on a written memorandum of points and authorities, which is not included in this record on appeal.

The court found there was no change in circumstances that would warrant a removal of I.A. from her current care provider. The court noted the record demonstrated I.A. was bonded with the current care provider, that the care provider was providing excellent care for I.A., and was more than willing to adopt I.A. The court denied appellant's request stating the reasons were because I.A. had developed a parent/child attachment with her prospective adoptive parent and that the adoptive parent was meeting all of I.A.'s daily needs and care. The court found no reason to change I.A.'s placement.

The court filed a written order denying appellant's section 388 petition because "[t]here is no change in circumstances and the proposed change is not in the minor's best interest."

## DISCUSSION

Appellant argues the court erred by denying her placement of I.A., citing several authorities touting the importance of sibling relationships. Specifically, appellant argues that (1) the "U.S. Constitution protects the sibling relationships of youth in foster care"; (2) "Federal court precedent … clearly establishes a First Amendment right to familial association"; (3) "Federal and California legislation have emphasized the importance of foster youth sibling relationships"; (4) "California law requires child welfare agencies to preserve and protect the sibling relationships of youth in foster care"; and (5) "Social science research has demonstrated the extraordinary importance of sibling relationships for youth in foster care."[2] We appreciate appellant's position on the general importance of the sibling bond; however, our role in this appeal is limited to the juvenile court's denial of her section 388 petition and accordingly we apply the appropriate legal standards which apply to denials of section 388 petitions.

A juvenile court order in a dependency proceeding may be changed, modified, or set aside if the petitioner establishes by a preponderance of the evidence that (1) new evidence or changed circumstances exist, and (2) the proposed change would promote the best interests of the child. (§ 388; *In re Stephanie M.* (1994) 7 Cal.4th 295, 316–317.) The petitioner bears the burden of showing both a legitimate change of circumstances and that undoing the prior order would be in the best interest of the child. (*In re Kimberly F.* (1997) 56 Cal.App.4th 519, 529.)

Orders on section 388 petitions are within the sound discretion of the juvenile court, and its decision shall not be overturned on appeal absent a clear abuse of

---

**2** While appellant does not directly raise the section 361.3 relative placement preference, because she indirectly implicates it by contending she should be given placement of I.A. because of her adoptive relation with I.A.'s biological half sibling, we briefly note the section 361.3 relative placement preference no longer applies after a section 366.26 hearing has taken place and a permanent plan of adoption has been selected for the child. (*In re K.L.* (2016) 248 Cal.App.4th 52, 65–66.)

discretion.  (*In re Stephanie M.*, *supra*, 7 Cal.4th at p. 318.)  A reviewing court will not disturb the juvenile court's decision unless it has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination.  (*Ibid*.)  " ' "When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court." ' "  (*Id*. at p. 319.)

Here, we do not find the juvenile court abused its discretion.  At the stage in a juvenile dependency petition after reunification services have been terminated, " 'the focus shifts to the needs of the child for permanency and stability' ....  A court hearing a motion for change of placement at this stage of the proceedings must recognize this shift of focus in determining the ultimate question before it, that is, the best interests of the child."  (*In re Stephanie M.*, *supra*, 7 Cal.4th at p. 317.)

From the limited record on appeal, we can determine the juvenile court's conclusion the proposed order was not in I.A.'s best interests was reasonable.  I.A. had been with her current caregiver her whole life and, according to the court's comments on the record, was bonded to her.  The juvenile court may have reasonably concluded it would have been detrimental to I.A. to be taken from the only parents she ever knew.  It appears I.A. had a handful of visits with V.W., and we acknowledge the theoretical importance of biological sibling relationships.  The juvenile court granted a hearing on appellant's petition, and we presume it fully considered this information as well, and gave it the weight it believed was appropriate.

We find no abuse of discretion on this record and find the juvenile court did not err by denying appellant's section 388 petition.

## DISPOSITION

The juvenile court's order is affirmed.